IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02251-CMA-MJW

SHAWN D.  ALLEN,

Plaintiff(s),

v.

JUDITH DAWSON,
MATT,
K.  WISCHMEIER,
THE COMMUNITY CORRECTIONS BOARD, and
MARY QUINTANA, Case Manager CTCF,

Defendant(s).

---

### RECOMMENDATION ON
### (1) MOTION TO DISMISS OF DEFENDANTS MATT SHEARS AND JUDITH DAWSON (Docket No. 17),
### (2) DEFENDANT JEFFERSON COUNTY CORRECTIONS BOARD'S MOTION FOR SUMMARY JUDGMENT (Docket No. 24),
### (3) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 38),
### (4) DEFENDANTS WISCHMEIER AND QUINTANA'S MOTION TO DISMISS (Docket No. 43),
### (5) DEFENDANT COMMUNITY CORRECTIONS BOARD'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT (Docket No. 48), and
### (6) PLAINTIFF'S MOTION TO DISMISS ANY "TAKINGS' PROCEDURAL DUE PROCESS CLAIM (Docket No. 60)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This matter was referred to this court pursuant to an Order Referring Case issued

on October 18, 2011, by Judge Christine M. Arguello.  (Docket No. 12).

### PLAINTIFF'S ALLEGATIONS

The operative pleading in this case is the pro se plaintiff's Amended Prisoner

2

Complaint (Docket No. 16) which was filed when the plaintiff was incarcerated.  Plaintiff was released (Docket No. 57), but it appears from another change of address notification (Docket No. 59) that the plaintiff is back in custody at the Denver County Jail.

Plaintiff's rambling, verbose Amended Prisoner Complaint is not a model pleading.  He bases jurisdiction pursuant to unspecified "state laws. Common law conspiracy. 1985. 1988. State laws. Title VII Civil Rights Act. Sec. 1986. Whistleblower Act." (Docket No. 16 at 4).  In a nutshell, plaintiff complains about being regressed back to prison from a halfway house placement shortly after he lodged complaints and filed grievances about the conditions at that facility.  His complaints were primarily about some other residents in his dorm smoking tobacco and that in his opinion, there were fire code violations.  More specifically, he alleges the following.

On January 12, 2011, plaintiff arrived at a Denver area halfway house, "CMI Columbine," run by a private for-profit corporation, Correctional Management Inc. ("CMI"), and was placed in a 20-man dorm.  Plaintiff could not sleep his first night there because the building was a "death trap" due to several inmates smoking tobacco. Plaintiff worried about a possible fire.  The windows were sealed and bolted shut, and no quick exit existed.  Plaintiff did not see any smoke detectors, and an evacuation plan was never given by the staff.  In addition, there were pest control problems (rat droppings in the kitchen) and no dishwasher (thus causing utensils to have to be cleaned with hand soap from a dispenser).  The halfway house did not offer any clothing items, bed sheets, towels, transportation/bus fare, or assistance in securing gainful employment.  On January 13, 14, 17, 18, and 20, 2011, plaintiff complained about the

deplorable and dangerous conditions, which were not conducive to his successful transition and well-being.

The supervisor (defendant CMI-Columbine programs director Judith Dawson) and plaintiff's case manager disapproved of plaintiff's litigious activities against prison officials. Plaintiff told them of his need to visit a law library and attend court hearings, and his civil actions were well documented in the case manager files. Defendants Dawson and Wischmeier told plaintiff to stop complaining. Plaintiff contacted the Fire Department, Denver medical staff, CMI's corporate office, and the Community Corrections Board ("CCB") about the fire code violations and also filed formal "CMI" grievances. "Working in concert towards one goal," defendants agreed to reject plaintiff from the halfway house program, which was in direct reprisal for his complaints. Although he violated no rules and broke no laws, he was arbitrarily returned to prison.

**Claim One.  Retaliation.**  Dawson violated plaintiff's First Amendment right to lodge complaints about his conditions of confinement by maliciously retaliating against plaintiff for exercising that right.  On January 13, 2011, plaintiff asked her if he could be provided a shower towel, and she said she would get him one.  Plaintiff mentioned that his living area was noisy and that the tobacco smoke bothered him, and she became angry and asked, "would you rather be back in prison?"  She did not immediately give plaintiff bus fare for a medical appointment.  Sleeping was difficult due to the smoke, there was a lack of smoke detectors that worked, and the dorm windows were bolted shut.  The building was a fire hazzard, and plaintiff does not smoke.  On January 13, 2011, plaintiff mailed a formal complaint to CMI's corporate office about CMI-Columbine in which he claimed it was a death trap, expressed concerns about his health, and

simply requested to be allowed to open the windows.  Plaintiff also reported the fire

hazard to medical staff on January 14, 2011, while at Denver Hospital.  One employee

said the conditions were in violation of fire codes and that it would be reported.

Four days later, plaintiff still had not received a towel.  CMI-Columbine offered no

assistance with bus fare or clothing.  Plaintiff had worn the same prison release clothes

for several days.  Consequently, plaintiff filed two grievances against CMI-Columbine,

requesting a transfer to a different halfway house and threatening civil litigation should

he be retaliated upon for filing the grievances.  Dawson received both grievances the

following day (January 18).  Copies were also sent to the CCB.

That day (January 18), plaintiff asked for bus fare so he could go to the law

library.  Dawson said, "you can walk," and started questioning plaintiff about his lawsuits

against CDOC officials.  Plaintiff then asked Dawson for copies of the forms plaintiff had

to sign in order to be in the program, and Dawson asked, "why?"  Dawson then asked

about the remedy in the grievances, not the issues complained of, and stated, "if you

want, I can have you transferred back to prison . . . or drop the complaints."  On January

20, 2011, in direct response to plaintiff's grievances, Dawson called for plaintiff's

termination for having engaged in protected activities.

On January 13, and 14, 2011, plaintiff complained about his living conditions to

defendant Matt, a CMI-Columbine staff member, and implored him to resolve matters by

simply moving plaintiff out of the 20-man dorm to a four-man room so he could breathe

better, stressing that the situation was not conducive to plaintiff's well-being.  Rather

than allowing plaintiff to move, Matt kept plaintiff in the hazardous environment.  In

addition, Matt told others in the dorm that plaintiff had pointed them out as the nuisance.

5

Matt retaliated against plaintiff on January 20, 2011.

On January 15 and 16, plaintiff's living conditions in the 20-man dorm were "most uncomfortable" due to the tobacco smoke, and plaintiff pleaded with Melissa and Bonnie (CMI-Columbine staff) to move him to the empty bed in a four-man room, but they both told plaintiff that Matt or Dawson could approve the moves and said they paged Matt. On Monday, January 17, however, plaintiff was still trapped in the smoke-filled 20-man dorm, so that evening plaintiff wrote the two grievances on CMI forms.

On January 19 during a group meeting at CMI-Columbine, plaintiff raised the issue of faulty smoke detectors and sealed windows to Matt, stating, "paramedics and other medical staff of Denver Medical told me such conditions run contrary to the fire safety codes." Matt was aware of plaintiff engaging in another protected act (the two grievances), and at approximately 7 p.m. on January 20, 2011, Matt woke plaintiff and told him to come to the office to discuss plaintiff's complaints. Once at the office, the Sheriffs told plaintiff to "cuff up." Plaintiff "had another incident outside of facility but [he] never told anyone." (Docket No. 16 at 8). "Matt, in cahoots with others - Wischmeier and Dawson at least - agreed to retaliate against me for exercising my right to both access the court and free speech." (Docket No. 16 at 9).

Defendant Wischmeier was a parole officer for the state of Colorado who was the CDOC liaison for CMI-Columbine at that time. "Wischmeier, in direct response to my having engaged in constitutional protected conduct - lodging grievances - had [plaintiff] arbitrarily and maliciously rejected by halfway house and returned to prison." (Docket No. 16 at 9). On January 18, 2011, Wischmeier learned of the grievances plaintiff submitted to Dawson. Plaintiff "deduce[s] as much from having viewed defendants

6

Dawson and Matt gathered together in the office in discussion, Wischmeier was present and in her hand were the grievances [plaintiff] had lodged. [Plaintiff] was waiting outside office." (Docket No. 16 at 9).  Later, plaintiff complained to Wischmeier about not receiving copies from Dawson copies of CMI forms plaintiff had to sign in order to be in the program.  Wischmeier advised plaintiff to stop complaining and warned him that he would not last long if he kept complaining.  Wischmeier told plaintiff that he should have come to her about the tobacco smoke, smoke alarm, and sealed windows, and "from that remark [plaintiff] deduce[s] either (or both) the 'CMI' corporate office or the county fire marshal contacted Wischmeier and or other 'CMI' staff about my complaints [plaintiff] respectively made on the 13th and 14th." (Docket No. 16 at 10).  Wischmeier had plaintiff sign documents on the 18th, and although plaintiff requested copies, he never received them.

On January 20 Wischmeier called plaintiff to the office and had plaintiff sign more documents.  Plaintiff asked if he would get copies, and she said, "I warned you to stop the complaints. . . . You don't have a right to pick what halfway house you're in." (Docket No. 16 at 10).  Plaintiff told her he simply asked to be moved out of the dorm due to the late-night smoke.  Wischmeier inquired about who he complained to about CMI other than the CCB and said she had talked with the CCB about the copies of grievances plaintiff had mailed them.  Two hours later, plaintiff was "hauled off" to jail due to CMI-Columbine rejecting him.  "Wischmeier responded willfully and wantonly to my herein-before particularized protected activities by partaking in a conspiratorial agreement with the other defendants in this lawsuit to have me terminated from the program." (Docket No. 16 at 10).

7

The CCA did not respond to plaintiff's two grievances and complaint letter. Plaintiff "felt confident" CCB would protect plaintiff from reprisal because it is in a "supervisory capacity as 'reviewing/referring agency." (Docket No. 16 at 11).  Instead of simply seeing that plaintiff was relocated to a safer halfway house, CCB "responded in a willful and wanton fashion by contacting, at least, defendant Wischmeier." (Docket No. 16 at 11).  It is plaintiff's "fervent contention that these two defendants, at said juncture, reached and came to agreement to arbitrarily reject [plaintiff] from CMI-Columbine." (Docket No. 16 at 11).  CCB made no effort to contact plaintiff once he was in jail from January 20, 2011, to March 14, 2011.  While in jail, plaintiff tried to contact CCB both via mail and telephone to find out what was going on, but CCB did not respond.  In fact, plaintiff sat in jail for two months and never heard from any of the defendants.  Plaintiff never received a "rejection letter" required by §§ 17-27-103(7) and 17-27-104(6), C.R.S.

According to plaintiff, his "protected conduct motivated the CCB to collude with Wischmeier to punish [plaintiff] by having [him] sent back to Buena Vista Correctional Facility." (Docket No. 16 at 12).  Wischmeier told plaintiff on January 20, 2011, at around 5 p.m. that she had been contacted by the CCB.  "It is [plaintiff's] sound contention that during this contact an illegal agreement was made between the two. Perhaps more." (Docket No. 16 at 12).

Defendant case manager Mary Quintana also retaliated against plaintiff, although plaintiff does "not appreciate Quintanas [sic] connection to the others [sic] defendants in this action. What is clear is this official reached an agreement to prevent me from halfway house placement with at least the [CCB]." (Docket No. 16 at 14).  In early September 2011 plaintiff "wrote a complaint to the case manager coordinator - Charles

8

Sanchez - 9.09.11.  Verbally complained to case manager Austin McBride and the

D.O.C. grievance officer, all about Quintana, others, conspiratorial malfeasance to

obstruct my liberty." (Docket No. 16 at 14).  Quintana repeatedly refused to process

grievances and only processed them after plaintiff lodged a complaint.  If plaintiff had

not prepared this civil action, lodged complaints, etc., Quintana would not have refused

to put plaintiff in for halfway house placement.

      **Claim Two.  Conspiracy to Deprive Civil Rights.**  On January 18, 2011,

plaintiff mailed to the CCB a letter and copies of the grievances he had mailed to

Dawson.  Sometime during the next two days, Wischmeier acknowledged the CCB had

received the copies and had communicated with her.  Plaintiff contends "these two

reached an illicit agreement at said juncture to deprive me of rights I enjoy." (Docket

No. 16 at 16).  In addition, the CCB received plaintiff's complaints and deprived plaintiff

of his right to equal protection.  Also, plaintiff "contend[s] that while in the office on

01.20.11 defendants Dawson, Matt and Wischmeier were having a sub rosa meeting of

the minds, as it were, to deprive me of my civil rights as detailed throughout this

complaint.  Two hours after said meeting [plaintiff] was taken to jail." (Docket No. 16 at

19).  Defendants violated 42 U.S.C. §§ 1983, 1985(2), and 1986.

      The CCB and/or Dawson were required by statute, § 17-27-102(1), C.R.S., to

conduct a hearing and give final approval of plaintiff's placement in the halfway house or

reject his placement after acceptance, but they failed to do so.  Plaintiff has never

received a notice or letter.  "It is [plaintiff's] sound deduction that [he] was not furnished

a copy of a 'rejection letter' deliberately so the defendants could fabricate such a

document subsequent to any civil action [plaintiff] might initiate." (Docket No. 16 at 17).

In early September 2011, plaintiff learned that Quintana communicated with the CCB in regard to this civil action.  On September 10, 2011, CTCF officials met and discussed this lawsuit.  Although plaintiff was due to be put back in for halfway house placement in October 2011, Quintana refused to submit the forms to the CCB.  "It is not yet clear what other officials conspired with Quintana, however, Quintanas [sic] own statement of having communicated with the CCB and this defendants refusal to put my referral in and the questioning of my litigation is demonstrative of collusion." (Docket No. 16 at 15).  Quintana violated 42 U.S.C. § 1985(2) and (3) because her discussions with a defendant (CCB) in a civil case and agreement to deprive plaintiff of his equal protection rights was conspiratorial and due to plaintiff's litigation against a parole officer (Wischmeier).

**Claim Three.  Class-of-One.  Equal Protection Clause.**  Defendants deprived plaintiff of his right to equal protection by discriminating against him for exercising his right to file grievances, lodge complaints, and litigate civil actions.  The "forty something other inmates in the halfway house - similarly situated - were not singled out and terminated from the program. [Plaintiff] was punished for having lodged grievances in violation of [plaintiff's] Fourteenth Amendment right." (Docket No. 16 at 25).

**Claim Four.  Substantive Due Process.**  According to the plaintiff:

Defendants Dawson, Matt, Wischmeier and the CCB, with utter malignance, discussed me and my complaints and subsequently reached an agreement to cause me significant injury by having me returned to prison.  As if that were not outrageous enough, their conspiratorial reprisal of arbitrarily terminating me from halfway house brought about a series of other harms and deprivations.  But for the rejection I would presently be

on "ISP status."  An inmate on said status lives on his own, wearing an electronic ankle thingy.  ISP-inmate is the states [sic] lowest form or level of lock up or incarceration.  ISP-inmate is much like "house arrest" but with more liberty.

I had as of 01.20.2011 - time of rejection - been incarcerated a continuous 9 years and 5 months.  While an ISP-inmate-(not parole mind you-) I had plans to work at least 40 hours a week.  To go to school so as to earn an associates degree, with such I could better work with at risk youth in the Denver area.  I had a few lady friends - Trina, Peggy, Amber and Claudia - I had the pleasure of meeting in January of 2011 while staying at halfway house.  The unlawful rejection broke us up.  I have gone ten years without sex.  I could have been in a serious relationship, or dating at least.  I planned to enjoy the spring and summer seasons and 40th birthday on ISP-inmate status; working, going to community college and litigating my civil action out of prison.  But the defendants envisioned other plans for my future.  Outrageous.

My mother would have come from Los Angeles for the month of July so we could together celebrate both my birthday and America's but instead I spent another fourth of July and birthday in prison.  Truly truly outrageous. . . .

I too suffered the loss of legal, as well as other personal property.  172 photographs I'd garnered over the past decade of my loved ones.  CMI-Columbine kept them.  My T.V [sic] set, radio, fan, legal books letters and cards my momma sent me and a book I was writing . . . gone.  Not to mention the phone numbers of four handsome ladys [sic] I had met.  These defendants out [sic] be locked up.  What a truly dispicable [sic] world this is when people in position authority can, for the most part, freely violate prisoners rights.  It has been seven months since rejection and I've gone without toothpaste and soap owing to the fact CMI-Columbine kept a large bag of toiletries I came in with.  I'm over $250 in the negative so purchasing such as been impossible.  I can't even look at a picture of my mother, can't even keep myself abreast with worldly events, (Judge Judy Jeopardy and Law & Order) for my television set was kept.  I suffered injury to my litigation before this court due to the rejection.  (See Claim 6) the withholding of my legal box and subsequent theft of legal documents, in an endeavor to frustrate this case, is indeed outrageous. . . .

(Docket No. 16 at 28-30).  The CCB had ample opportunities to have plaintiff transferred to another halfway house but with deliberate indifference failed to do so and would not even accept plaintiff's calls or letters from jail.  State law and CCB's policy which require

that notice be given regarding a review and other procedures created a liberty and

property interest.  In addition, plaintiff's halfway house termination was due 100 percent

to his complaints, and thus the adverse act was "indubitably arbitrary, capricious and

most malignant."  (Docket No. 16 at 31).

**Claim Five.  Procedural Due Process.**  The CCB and Dawson as Programs

Supervisor deprived plaintiff of procedural due process when he was arbitrarily rejected

by the halfway house on January 20, 2011.  State statutes required them to afford him

due process, and they deliberately denied plaintiff such right. §§ 17-27-102(1), 17-27-

103(7)(10), and 17-27-104(6), C.R.S.  Plaintiff never received a notice, a hearing, a

rejection letter, instructions on how to appeal, etc.  Wischmeier failed to provide notice.

Plaintiff tried to contact the CCB via telephone and mail to no avail because the CCB

refused plaintiff's calls and ignored plaintiff's mail.  Defendants also deprived plaintiff of

his property without due process.  He has tried to have his property returned through

grievances to no avail.

**Claim Six.  Access to the Courts.**  As detailed above, the defendants

conspired, and they injured plaintiff's active cases before the U.S. District Court and the

Colorado Court of Appeals.  Specifically, in case number 10-cv-02207-CMA-MJW, it

was obvious that plaintiff was suing prison officials because that information was in

plaintiff's files that were in the defendants' possession, plaintiff expressed the need to

visit the public law library regularly, and he had a "legal box" documented upon his

arrival by CMI-Columbine which was kept in Matt's office.  After plaintiff's termination

from the halfway house, that box was detained, which "may very well have been 'the

plan.'" Case 10CA1755 was dismissed by the Colorado Court of Appeals due to

Wischmeier not returning or forwarding to plaintiff at the jail his legal mail from the

appellate court that was mailed to CMI-Columbine on February 7, 2011 (Pl.'s Ex. 7).

Wischmeier sent it to plaintiff in June 2011, and it had been opened.  Plaintiff could not

meet the deadline, and the case was dismissed.  That case was connected to 10-cv-

02207-CMA-MJW.  "But for the injury [plaintiff] would've had the bunk COPD conviction

expunged.  Lower security points."  (Docket No. 16 at 33).

In May 2011 defendant S. Heger was dismissed from case number 10-cv-01992-

CMA-MJW due to plaintiff's inability to provide a current address for Heger so the court

could serve the defendant.  "But for the arbitrary termination [plaintiff] would have

effortlessly used resources available to those out of prison to look up the address for S.

Heger."  (Docket No. 16 at 34).

In case number 09-cv-02605-CMA-MJW, plaintiff had to miss court appearances

because mail sent to plaintiff at CMI-Columbine by this court and Assistant Attorney

General Gellar were retained by Wischmeier and mailed to plaintiff in June 2011.

Plaintiff could not properly litigate without his legal property from January 20, 2011.

Plaintiff had to file a motion for a temporary restraining order (docket No. 59 in other

case) and others to have the court send copies of vital documents.  Plaintiff could not

produce documentary evidence necessary to defeat defendants' summary judgment

motion because his copy was in his legal box being withheld by defendants.  Therefore,

that case was prejudiced.

In May 2011, in order to thwart litigation, Wischmeier maliciously removed two

manila envelopes from plaintiff's legal box, one had trial evidence for case no. 10-cv-

02207, and the other had affidavits against CMI-Columbine and other related

documents.

**Relief.**  Plaintiff seeks compensatory and punitive damages.  He notes that "this

case is not one where I suffered a physical or emotional injury.  I do not make a claim

for any such injury.  I am not seeking any change in my parole date."  (Docket No. 16 at

36).

## PENDING MOTIONS

Now before the court for a report and recommendation are the following motions:

(1) Motion to Dismiss of Defendants Matt Shears and Judith Dawson (Docket No. 17),

(2) Defendant Jefferson County Corrections Board's Motion for Summary Judgment

(Docket No. 24), (3) Plaintiff's Motion for Preliminary Injunction (Docket No. 38),

(4) Defendants Wischmeier and Quintana's Motion to Dismiss (Docket No. 43),

(5) Defendant Community Corrections Board's Motion to Dismiss or in the Alternative

for More Definite Statement (Docket No. 48), and (6) Plaintiff's Motion to Dismiss Any

"Takings" Procedural Due Process Claim (Docket No. 60).

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d

14

906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic

Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise

a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1191 (quoting Iqbal, 129 S. Ct. at 1949)).  "Accordingly, in examining a complaint under

Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**1. Motion to Dismiss of Defendants Matt Shears and Judith Dawson (Docket No. 17).**  Defendants Matt Shears and Judith Dawson seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the ground that the Amended Complaint fails to state a civil rights claim against them because it fails to alleged that they committed any state action or violated plaintiff's constitutional rights through state action.  They note that the plaintiff's pleading states that "Correctional Management, Inc. is a private for profit corporation" (Docket No. 16 at 1) and identifies Shears and Dawson as employees of that private corporation.  (Docket No. 16 at 2).  "As . . . private citizen[s], [defendants] can be held liable under § 1983 only if [they were] 'willful participant[s] in joint action

with the State or its agents.'" <u>Beedle v. Wilson</u>, 422 F.3d 1059, 1071 (10th Cir. 2005).

"When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by

implicating state officials . . . in a conspiracy with private defendants, mere conclusory

allegations with no supporting factual averments are insufficient; the pleadings must

specifically present facts tending to show agreement and concerted action." <u>Sooner</u>

<u>Prods. Co. v. McBride</u>, 708 F.2d 510, 512 (10th Cir. 1983).  Plaintiff's allegations of

conspiracy by these private actors are conclusory.  These defendants are thus not

subject to liability under § 1983.  <u>See</u> <u>Phillips v. Goord</u>, 2009 WL 909593, at *3

(W.D.N.Y. Apr. 1, 2009) (Halfway house's website states that it is a not-for-profit agency

which alone would lead one to conclude that it is a private organization not subject to

liability under § 1983.).  Therefore, it is recommended that their motion to dismiss be

granted.

     **2.  Defendant Jefferson County Corrections Board's Motion for Summary**

**Judgment (Docket No. 24)**.  Defendant Jefferson County Corrections Board ("JCCB"),

which was captioned in plaintiff's pleading as "the Community Corrections Board,"

moves for summary judgment, asserting that it never supervised plaintiff nor does it

have any relationship to the CMI-Columbine halfway house.  Instead, it appears that the

City and County of Denver's CCB has an agreement to house individuals in its

community corrections programs at CMI-Columbine.  Furthermore, plaintiff was

sentenced by the Denver District Court to the Colorado Department of Corrections

("CDOC").  The court notes that in his Prisoner Complaint, the plaintiff provided the

court with the address of the CCB in Lakewood, Colorado, rather than Denver.

18

In response, plaintiff has essentially confessed this motion.  Plaintiff filed a

motion to grant JCCB's motion for summary judgment (Docket No. 32), admitting that

the JCCB "is indeed the incorrect community corrections board."  It is thus

recommended that the JCCB's motion for summary judgment be granted.

The court notes that after plaintiff filed his motion to grant JCCB's motion, plaintiff

provided the court with an address for the CCB in Denver, and the court thus issued an

order directing service upon that defendant.  (Docket No. 41).

**3.  Plaintiff's Motion for Preliminary Injunction (Docket No. 38)**.  Plaintiff

moves for a preliminary injunction, seeking an order directing defendant Quintana to

refrain from "current acts of malicious reprisals" (Docket No. 38 at 1).  Plaintiff asserts

Quintana has refused to provide plaintiff with several account statements, needed in his

civil actions in this court pursuant to court order, and thus plaintiff has had to obtain

them from a non-case management official.  Plaintiff "fervently contend[s] [he is] being

denied such in reprisal and perhaps to get cases dismissed."  (Docket No. 38 at 2).  He

asks the court to order Quintana to provide him the certified account statements.

Plaintiff avers in his Amended Prisoner Complaint that Quintana was his case

manager at "CTCF [Colorado Territorial Correctional Facility] - A D.O.C. Facility."  (See

Docket No. 16 at 15).  Plaintiff, however, now appears to be in custody at the Denver

County Jail, not CTCF, and thus Quintana would not be his current case manager.

Therefore, it is recommended that plaintiff's Motion for a Preliminary Injunction (Docket

No. 38) be denied as moot.

**4.  Defendants Wischmeier and Quintana's Motion to Dismiss (Docket No.**

19

**43).**   Defendants Wischmeier and Quintana (hereinafter "the CDOC defendants") seek

dismissal of the Amended Prisoner Complaint against them for lack of subject matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon

which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  More specifically, they

assert the following grounds for dismissal: (1) plaintiff's claims are barred by Eleventh

Amendment immunity; (2) plaintiff seeks compensatory and punitive damages with

respect to his various claims, but he is entitled to neither; (3) plaintiff has no right to

serve his sentence in a halfway house; (4) plaintiff's allegation of retaliation is

conclusory and based on nothing more than his speculation; (5) plaintiff's conclusory

allegations are insufficient to state a claim of conspiracy under § 1985; (6) plaintiff's

claim based upon the loss of certain property cannot be brought under § 1983;

(7) plaintiff's "class of one" equal protection claim fails; (8) plaintiff's substantive due

process claim fails as a matter of law because his return to prison is not so outrageous

as to shock the conscience; (9) plaintiff's claim of a denial of procedural due process

fails; (10) plaintiff's claim of denial of access to the courts fails; and (11) defendants are

entitled to qualified immunity.

     **Eleventh Amendment.**   Plaintiff sues the defendants in their official and

individual capacities.  (See Docket No. 16 at 1).  The CDOC Defendants correctly assert

that plaintiff's claim for damages against them in their official capacities is barred by the

Eleventh Amendment.  "A suit against an individual officer of a government agency in

his or her official capacity is really 'only another way of pleading an action against an

entity of which an officer is an agent.'"  Kennedy v. Finley, 2011 WL 3236174, at *3 (D.

Colo. July 28, 2011) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  "[A]

plaintiff seeking to recover on a damages judgment in an official-capacity suit must look

to the government entity itself."  Id. (quoting Kentucky v. Graham, 473 U.S. at 165)).

Here, plaintiff seeks only monetary damages.  Therefore, the official capacity claims

against the defendants should be dismissed.

**Damages.**  The CDOC defendants assert that plaintiff fails to state a claim for

damages.  They note that he seeks compensatory and punitive damages with respect to

his various claims.  However, they contend that his claim for compensatory damages is

barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, because he alleges no

physical injury.  In addition, they assert that plaintiff's factual allegations do not rise to

the level that would warrant punitive damages, asserting that plaintiff does not even

allege a constitutional violation as it pertains to them and fails to allege facts

demonstrating that any CDOC defendant acted with callous indifference to his federally

protected rights.  Finally, they assert that plaintiff's punitive damage claim is derivative

of his substantive claim, and if no actual damages are awarded, no punitive damages

may be awarded.

In his response, plaintiff states, "I do not seek damages for either a physical or

emotional injury.  Compensatory damages are appropriate.  I specify a plausible claim

of malicious malfeasance by both Wishmeier and Quintana to warrant punitive

damages.  A jury can make such decisions.  There's been no discovery in this case."

(Docket No. 47 at 2).

Section 1997e(e) provides that "[n]o Federal civil action may be brought by a

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional

21

injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. §

1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear
> damages restrictions on the basis of the underlying rights being asserted.
> The underlying substantive violation . . . should not be divorced from the
> resulting injury, such as "mental or emotional injury," thus avoiding the
> clear mandate of § 1997e(e).  The statute limits the remedies available,
> regardless of the rights asserted, if the only injuries are mental or
> emotional.

Searles v. VanBebber, 251 F.3d 869, 876 (10th Cir. 2001), cert. denied, 536 U.S. 904

(2002).

In this case, plaintiff has not alleged any physical injury and admits in his

response that he does not seek damages for a physical injury.  Therefore, he would be

unable to recover compensatory damages pursuant to 42 U.S.C. § 1997e(e).  Id.

However, even in the absence of a showing of physical injury, § 1997e(e) does not bar

recovery of nominal or punitive damages for a constitutional violation.  Id. at 879, 881.

"[A]n award of nominal damages is mandatory upon a finding of a constitutional violation

. . . ."  Id. at 879.  Furthermore, "as a general rule, punitive damages may be recovered

for constitutional violations without a showing a compensable injury."  Id. at 880.  To

obtain punitive damages under § 1983, plaintiff must show that defendants' conduct

was "'motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference

to the federally protected rights of others.'"  Id.  (quoting Smith v. Wade, 561 U.S. 30, 56

(1983)).  Plaintiff here alleges that defendants acted willfully, wantonly, and maliciously.

(See, e.g., Docket No. 16 at 10, 11, 14).  Therefore, at least at least this early pleading

stage, plaintiff's demand for punitive damages survives the motion to dismiss.

**Halfway House Regression and Procedural Due Process.**  The CDOC

22

defendants next assert that plaintiff has no right to serve his sentence in a halfway

house.  In support of this argument, defendants make arguments concerning no federal

constitutional right to parole, the inability to bring a § 1983 action for damages based on

an allegedly invalid conviction or sentence unless the conviction or sentence has been

invalidated, and that a § 1983 action is not the proper avenue for a state inmate to

challenge his sentence or parole revocation.  Plaintiff responds that he is not making

any claims concerning parole and is not challenging his sentence or conviction.

Nevertheless, plaintiff's "claim challenging [his] regression from community corrections

is analogous to a claim challenging the revocation of parole or probation." Salmen v.

Doe, 2006 WL 1222345, at *1 (D. Colo. May 5, 2006).  Inasmuch as the plaintiff has not

alleged, and nothing in the file indicates, that he has invalidated his removal from

community corrections, any claims for damages regarding his regression from

community corrections are barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

Id.; Andrade v. Christ, 2009 WL 2848984, at *11 (D. Colo. Sept. 1, 2009) (applying Heck

to a procedural due process Fourteenth Amendment claim based upon an allegation of

an improper regression to the CDOC and also finding that the plaintiff failed to allege

that he was deprived of a protected liberty interest when so regressed); Holloman v.

Zavaras, 2008 WL 2572152, at *1 (D. Colo. June 25, 2008) (Plaintiff "may not recover

damages for the alleged denial of due process in his regression from community

corrections to prison and for the alleged act of retaliation" based upon Heck.  Plaintiff's

"claim challenging his regression from community corrections is analogous to a claim

challenging the revocation of parole or probation.").  Therefore, plaintiff's claim for

damages for the alleged wrongful regression and procedural due process violation are

barred by <u>Heck</u> and should be dismissed without prejudice.

**Retaliation Claim.**  It is well-settled that "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his' constitutional rights." <u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998).  <u>See</u>  <u>Gee v. Pacheco</u>, 627 F.3d 1178, 1189 (10th Cir. 2010) (internal quotation marks omitted) (citing <u>Smith v. Machner</u>, 899 F.2d 940, 947 (10th Cir. 1990)).  Plaintiff may make a showing of retaliation by demonstrating the following: 1) he engaged in constitutionally protected activity; 2) defendants' actions caused plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." <u>Shero v. City of Grove, Okla.</u>, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212 (10th Cir. 2000)).  The third element requires that the plaintiff show that defendants' retaliatory motive was a "but for" cause of the defendants' actions. <u>Smith v. Maschner</u>, 899 F.2d 940, 949-50 (10th Cir. 1990).  "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." <u>Peterson</u>, 149 F.3d at 1144 (quotation omitted) (emphasis in original).  Factual allegations consisting only of engagement in protected activity, for example filing prison grievances, "[do] not establish the requisite causal connection for [a] retaliation claim.  If it did, litigious prisoners could claim retaliation over every perceived slight and resist summery judgment simply by pointing to their litigiousness." <u>Strope v. Cummings</u>, 381 Fed. App'x 878, 883 (10th Cir. 2010) (unpublished).  Furthermore, temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the

causal nexus for a retaliation claim.  See Friedman v. Kennard, 248 Fed. App'x 918,

922 (10th Cir. 2007) (citing cases) ("Standing alone and without supporting factual

allegations, temporal proximity between an alleged exercise of one's right of access to

the courts and some form of jailhouse discipline does not constitute sufficient

circumstantial proof of retaliatory motive to state a claim.").

Here, like the plaintiff in Strope, plaintiff's "attribution of retaliatory motive is

conjectural and conclusory."  Strope, 381 Fed. App'x at 883.  Plaintiff has not alleged

specific facts showing retaliation by defendants and does not meet the strict "but-for"

standard for causation.  As noted by the moving defendants, plaintiff alleges that he

deduced Weishmeier's knowledge of his grievances based on his having seen her

talking to the other defendants (Claim 1, p. 4, ¶ 11), and plaintiff merely speculates that

Weischmeier and the other defendants conspired to reject him from the halfway house

and return him to prison.  (Claim 1, p. 6-8).  Plaintiff also merely speculates that

Quintana communicated with the CCB and later met with CTCF officials to discuss the

lawsuit.  (Claim 1, p. 9-10).  Plaintiff's conclusory allegations that are based on pure

speculation do not state a claim upon which relief can be granted.

**Conspiracy Claims.**  Plaintiff's allegations regarding conspiracies among the

various defendants are also inadequate.   "Allegations of conspiracy may . . . form the

basis of a § 1983 claim. . . . However, a plaintiff must allege specific facts showing an

agreement and concerted action amongst the defendants. . . . 'Conclusory allegations

of conspiracy are insufficient to state a valid § 1983 claim.'"  Tonkovich v. Kansas Bd. of

Regents, 159 F.3d 504, 533 (10th Cir. 1998) (quoting Hunt v. Bennett, 17 F.3d 1263,

1266 (10th Cir. 1994)).  See Jorgensen v. Montgomery, 2008 WL 216398, at *2 (D. Colo.

Jan. 24, 2008) (citations omitted) ("[A] plaintiff must allege specific facts which show

both an agreement to deprive the plaintiff of his legal rights, as well as concerted action

among the defendants. . . .  However, there is no requirement of an express agreement,

nor must the conspirators know all of the details of the conspiracy.").         Similarly,

conspiracy claims under § 1985(3) must also be pled with more than "conclusory

allegations that defendants acted 'in concert,' or 'conspired' without specific allegations

to support such assertions . . . ." Merritt v. Hawk, 153 F. Supp.2d 1216, 1225 (D. Colo.

2001).  See Cox v. Pastilletti, 2012 WL 934293 (D. Colo. Mar. 20, 2012) (Inmate did not

allege that the alleged conspiracy to deprive him of his rights was racially motivated,

failed to identify any other class-based invidiously discriminatory animus on which to

base his § 1985(3) claim, and failed to allege any specific facts to support the existence

of the asserted conspiracy.  Therefore, claim was legally frivolous and was dismissed.).

Here, plaintiff has provided no facts to support even an inference that some plan or joint

action existed between or among any the defendants.  Therefore, plaintiff's conspiracy

claims fail as a matter of law.

   **Loss of Property.**   The CDOC defendants assert that it appears that plaintiff is

asserting a claim based on the loss of certain property (Claim 6, pp. 1-2), and that if the

allegation is that they lost his property, the claim must be dismissed because a

negligent deprivation of property does not violate the Constitution.  On the other hand, if

the allegation is that they intentionally destroyed his property, § 1983 provides no

remedy for an unauthorized intentional deprivation of property by a state employee,

provided that the state provides a meaningful post-deprivation remedy, which would

have been available in state court pursuant to §§ 24-10-104 and 24-10-118, C.R.S.

26

This court agrees with the defendants that plaintiff's deprivation of property claim cannot be brought under § 1983.  As was stated in another case brought by this same plaintiff, "'if adequate state post-deprivation remedies are available,' then intentionally depriving someone of property is not a violation of the Fourteenth Amendment."  Allen v. Reynolds, 2010 WL 2483888, at *2 (D. Colo. June 14, 2010) (citing Durre v. Dempsey, 869 F.2d 543, 547 (10th Cir. 1988)).  "The Tenth Circuit requires a plaintiff to plead that these remedies are inadequate for the claim to survive a Rule 12(b)(6) motion."  Id. (citing Montana v. Hargett, 84 Fed. Appx. 15, 17 (10th Cir. 2003) (unpublished)).  As this court stated in that case, plaintiff "had adequate state remedies available to him to contest the alleged property deprivations, see Durre . . ., such as a conversion claim if he complies with the requirements of the Colorado Governmental Immunity Act."  Allen v. Reynolds, 2010 WL 2483955, at *3 (D. Colo. Mar. 15, 2010).  Therefore, to the extent the plaintiff is asserting a takings claim, it is recommended that such claim be dismissed with prejudice.

Almost eight months after defendants filed their motion to dismiss (Docket No. 17), plaintiff filed a Motion to Dismiss Any "Takings" Procedural Due Process Claim (Docket No. 60, filed June 20, 2012) in which it appears that plaintiff has confessed the defendants' argument for dismissal of this property claim.

**Class-of-One Equal Protection Claim.**  The CDOC defendants next assert that to the extent plaintiff is asserting a "class of one" equal protection claim, his claim fails because in his pleading, he has not identified similarly-situated inmates who received more favorable treatment.

The first element of an equal protection violation is that the plaintiff was

27

intentionally treated differently from others similarly situated.  <u>SECSYS, LLC v. Vigil</u>,

666 F.3d 678, 688 (10th Cir. 2012) (quoting <u>Village of Willowbrook v. Olech</u>, 528 U.S.

562, 564 (2000) (per curiam)); <u>see</u> <u>Jennings v. City of Stillwater</u>, 383 F.3d 1199, 1213

(10th Cir. 2004) (This element is especially important in class of one cases.).  Because

"it is exceedingly difficult to demonstrate that any difference in treatment is not

attributable to a quirk of the plaintiff or even to the fallibility of administrators whose

inconsistency is as random as it is inevitable . . . courts have imposed exacting burdens

on plaintiffs to demonstrate similarity in class-of-one cases."  <u>Jicarilla Apache Nation v.

Rio Arriba County</u>, 440 F.3d 1202, 1213 (10th Cir. 2006).  "Inevitably, the degree to

which others are viewed as similarly situated depends substantially on the facts and

context of the case.  <u>Jennings</u>, 383 F.3d at 1214.

  This court concludes that plaintiff's allegations here are not sufficient to state a

"class-of-one" equal protection claim because he failed to allege facts in his pleading

establishing he was similarly situated in all material respects to the other halfway house

residents to whom he compared himself.  <u>See</u> <u>Kansas Penn Gaming, LLC v. Collins</u>,

656 F.3d 1210, 1216 (10th Cir. 2011); <u>Jicarilla Apache Nation</u>, 440 F.3d at 1212-13.

  **<u>Substantive Due Process.</u>**  The CDOC defendants next assert that the plaintiff's

claim of a substantive due process violation fails as a matter of law because the

conduct, as alleged, can hardly be said to "shock the conscious."  This court agrees.

  "To show a deprivation of a protected interest . . . in violation of substantive due

process protection, a plaintiff must demonstrate that the government officials acted in a

manner 'so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience.'"  <u>Deray v. City of Colorado Springs, Colo.</u>, 2012 WL

1901220, at *6 (D. Colo. May 25, 2012) (quoting <u>Ellis ex rel. Estate of Ellis v. Ogden</u>

<u>City</u>, 589 F.3d 1099, 1101 (10th Cir. 2009)).  "'The "ultimate" standard for determining

whether there has been a substantive due process violation is whether the challenged

government action shocks the conscience of federal judges.'" <u>Id.</u>  (quoting <u>Graves v.</u>

<u>Thomas</u>, 450 F.3d 1215, 1220 (10th Cir. 2006)).  The conduct alleged "must do more

than show that the government actor intentionally or recklessly caused injury to the

plaintiff by abusing or misusing government power . . . . [It] must demonstrate a degree

of outrageousness and a magnitude of potential or actual harm that is truly conscience

shocking." <u>Livsey v. Salt Lake County</u>, 275 F.3d 952, 957-58 (10th Cir. 2001)

(quotations omitted).

Here, plaintiff alleges the following which he claims are sufficiently outrageous.

He was returned to prison, which resulted in the following.  He was unable to enjoy the

spring, summer, and his fortieth birthday while on "ISP status" where he could live on

his own "wearing an electronic ankle "thingy;" could not go to school to earn an

associates degree; could not be "in a serious relationship, or dating at least" (noting he

had gone ten years without sex); broke up his relationship with Trina, Peggy, Amber,

and Claudia (women he had met at the halfway house); missed celebrating his birthday

and the Fourth of July with his mother; and suffered the loss of property.  (See Docket

No. 16 at 28-30).  These allegations do not rise to the requisite level of outrageousness

and a magnitude of potential or actual harm that is truly conscious-shocking.  Therefore,

plaintiff's substantive due process claim should be dismissed.

**Access to the Courts.**  With respect to plaintiff's First Amendment denial of

access to the courts claim, plaintiff must show that the defendants' actions resulted in

"actual injury" by frustrating, impeding, or hindering his efforts to pursue a non-frivolous legal claim concerning his conviction or conditions of confinement.  See Gee, 627 F.3d at 1191; Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006); Rainey v. Morris, 2012 WL 769518, at *1 (D. Colo. Mar. 8, 2012).  "Conclusory allegations of injury in this respect will not suffice."  Wardell, 470 F.3d at 959 (citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)).

Here, the CDOC defendants assert that the Amended Complaint does not contain any allegation of facts which, if proven, would show that the taking of particular legal materials deprived plaintiff of the ability to file a pleading with any court, caused him to miss a court-imposed deadline, or caused a case to be dismissed.  They argue that plaintiff's factual allegations are not enough to raise a right to relief above the speculative level and thus do not survive a motion to dismiss.  This court agrees.

Plaintiff alleges that in case number 10-cv-01992-CMA-MJW, but for his regression back to prison, he "would have effortlessly used resources available to those out of prison to look up the address for S. Heger."  (Docket No. 16 at 34).  The court notes, however, that in that case, it was not until May 5, 2011, which was months after plaintiff was regressed to prison, that this court held a Show Cause Hearing with respect to the non-service of defendant Heger.  (See Docket No. 51 in Case No. 10-cv-01992-CMA-MJW).  Plaintiff had months to obtain Heger's address, including the time during which he was in the half-way house, yet he failed to do so.  Plaintiff's allegation that defendants' act of regressing him to prison (months before Heger was dismissed) caused the dismissal of the claims against Heger is speculative.

In addition, plaintiff has failed to state a claim regarding a denial of access to the

courts as a result of Wischmeier's alleged failure to forward (until June 2011) or return

to sender mail sent to plaintiff by the court on February 7, 2011.  Plaintiff claims in one

case, he was unable to meet an unspecified deadline, and an appellate case was

dismissed.  The court notes, however, that the plaintiff also avers in his pleading that he

was removed from CMI-Columbine on January 20, 2011.  The court takes judicial notice

of this court's local rules and the rules of the Tenth Circuit Court of Appeals which

requires litigants to file any change of address with the court.  See D.C.COLO.LCivR

10.1(M) (requiring the filing of any change of address within five days); Tenth Circuit

Rule 46.1(C).  Therefore, plaintiff's failure to receive legal mail from the court mailed on

February 7, 2011, well over two weeks after his regression, was due to plaintiff's own

failure to advise the court of his change of address.  This court has repeatedly advised

plaintiff of his obligation to keep the court informed of his current address.  (See, e.g.,

Docket No. 72 in Case No. 09-cv-02605-CMA-MJW).

    In addition, plaintiff asserts that in case number 09-cv-02605-CMA-MJW he had

to miss court appearances because mail sent by the court and the Attorney General to

plaintiff at CMI-Columbine was retained by Wischmeier and mailed to plaintiff in June

2011.  The court takes judicial notice of the court's docket in that case.  A review of that

docket shows that mail sent to plaintiff at CMI-Columbine was returned to the court by

CMI in early February 2011 (Docket No. 68 in Case No. 09-cv-02605-CMA-MJW).  In

addition, in that case, plaintiff once again failed to provide the court with a change a

address in a timely manner and thus violated Local Rule 10.1(M).  (See Docket No. 72

in that case).  Moreover, the docket does not reflect any a dismissal of any claims as a

result of mail sent to the plaintiff to CMI-Columbine and not forwarded.  In fact, when

31

plaintiff failed to appear for the Final Pretrial Conference and failed to participate in the

preparation of the proposed Final Pretrial Order, this court reset the Final Pretrial

Conference.  (See Docket Nos. 72 and 94 in that case).

Plaintiff also avers that he could not properly litigate without his legal property

from October 20, 2011, to the time of the preparation of the Amended Complaint, so he

had to seek a temporary restraining order in that case and others[1] so as to have the

court send copies of vital documents to him.  In addition, he claims he could not

produce documentary evidence necessary to defeat defendants' summary judgment

motion because the court refused his request for a copy.  His copy was in his legal box

withheld by defendants, and thus that case was prejudiced.  The court takes judicial

notice, however, of its rulings in some of the plaintiff's other cases, which reflect that

plaintiff's box of legal material was available to the plaintiff at the Lincoln Parole Office,[2]

yet there was no indication that plaintiff himself made any attempts to retrieve his

property from that office.  Consequently, this court denied plaintiff's request for copies

(10-cv-02207-CMA-MJW, Docket No. 51).  In addition, his request for a temporary

restraining order directing that his box be sent to him was denied.  (See Case No. 09-

---

[1]Plaintiff withdrew his motion for a TRO with respect to his box of legal materials in Case No. 10-cv-02207-CMA-MJW after this court issued a report and recommendation, recommending that the motion for TRO be denied.  (See Docket Nos. 50, 72).  The court noted the location of the plaintiff's legal property, as stated in plaintiff's own exhibit to his motion for a TRO.  Notwithstanding that information, in his motion to withdraw his motion for a TRO, plaintiff claimed it was clear his "vital legal property" had been stolen.  (Docket No. 72).

[2]Plaintiff's own submission to the court in that case shows he had been given the telephone number, facsimile number, and website address for the Adult Parole Headquarters.  (Civil Action No. 10-cv-02207-CMA-MJW, Docket No. 48 at 4).

cv-02605-WJM-MJW, Docket Nos. 65 and 84).

Plaintiff further contends that in May 2011 Wischmeir removed two manila envelopes from plaintiff's legal box to thwart plaintiff's litigation.  One envelope was labeled "LCF Trial Evidence #2207," and the other contained affidavits against CMI-Columbine and other related documents.  Plaintiff has not indicated, however, how Wischmeir's acts resulted in "actual injury" to any non-frivolous legal claim concerning his conviction or conditions of confinement.  Moreover, plaintiff does not state the basis for his bald claim that Wischmeir took some of plaintiff's property months after plaintiff was regressed.

Based upon the findings above, the court recommends that the plaintiff's First Amendment denial of access to the courts claim be dismissed.

**5.  Defendant Community Corrections Board's Motion to Dismiss or in the Alternative for More Definite Statement (Docket No. 48)**

Defendant City and County of Denver (identified as CCB in the plaintiff's pleading) moves pursuant to Fed. R. Civ. P. 8(a)(2) for dismissal of the Amended Complaint or alternatively for an order requiring plaintiff to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e).

Defendant CCB asserts that contrary to Rule 8(a)(2), which requires that a complaint be comprised of short and plain statements, plaintiff's pleading is 46 hand-written pages long, most of the pages contain two paragraphs (with some containing three), and it is "rife with legal argument, factual argument, and sheer guessing.  The allegations of the amended complaint are neither short nor plain."  (Docket No. 48 at 1-

2).  Therefore, defendant CCB asserts the Amended Complaint should be dismissed.

Alternatively, defendant CCB contends that plaintiff should be required to provide a more definite statement.  Defendant CCB notes that plaintiff lists various statutes plaintiff claims defendants have violated, and defendant CCB asserts that such list "is so unclear so as to make response to the complaint virtually impossible."  (Docket No. 48 at 2).  "Because of the size and prolixity of the complaint, Defendant [allegedly] cannot formulate an answer or thorough motion to dismiss without plaintiff providing specific information."  (Docket No. 48 at 2).

This court agrees with defendant CCB that the Amended Complaint is prolix, is not comprised of short and plain statements, and is rife with arguments and conjecture. Nevertheless, for the reasons stated in the text above, rather than ordering plaintiff to provide a more definite statement, it is recommended that the Amended Complaint be dismissed as against this defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Motion to Dismiss of Defendants Matt Shears and Judith Dawson (Docket No. 17) be **GRANTED**.  It is further

**RECOMMENDED** that Defendant Jefferson County Corrections Board's Motion for Summary Judgment (Docket No. 24) be **GRANTED**.  It is further

**RECOMMENDED** that the Plaintiff's Motion for Preliminary Injunction (Docket No. 38) be **DENIED AS MOOT**.  It is further

**RECOMMENDED** that Defendants Wischmeier and Quintana's Motion to Dismiss (Docket No. 43) be **GRANTED**.  It is further

34

**RECOMMENDED** that Defendant Community Corrections Board's Motion to Dismiss or in the Alternative for More Definite Statement (Docket No. 48) be **DENIED**. However, it is further recommended that the Amended Complaint be dismissed as against this defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

**RECOMMENDED** that Plaintiff's Motion to Dismiss Any "Takings" Procedural Due Process Claim (Docket No. 60) be **GRANTED**.

If the court accepts and adopts the above recommendations, then it is further

**RECOMMENDED** that the court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from such order would not be taken in good faith and therefore *in forma pauperis* status be denied for the purpose of appeal.  See Coppedge v. United States, 369 U.S. 438 (1962).  If such a certification is made, and the plaintiff files a notice of appeal, he would then be required to pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10<u>th</u> Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  June 21, 2012                    <u>s/ Michael J. Watanabe</u>
      Denver, Colorado                 Michael J. Watanabe
                              United States Magistrate Judge